# QUACKENBUSH, CALIFORNIA INSURANCE COMMISSIONER *v.* ALLSTATE INSURANCE CO.

No. 95–244.   Argued February 20, 1996—Decided June 3, 1996

O'CONNOR, J., delivered the opinion for a unanimous Court. SCALIA, J., *post*, p. 731, and KENNEDY, J., *post*, p. 733, filed concurring opinions.

*Karl L. Rubinstein* argued the cause for petitioner. With him on the briefs were *Dana Carli Brooks, Melissa S. Kooistra, William W. Palmer,* and *David L. Shapiro.*

*Donald Francis Donovan* argued the cause for respondent. With him on the brief were *Carl Micarelli, Joseph D. Lee,* and *James G. Sporleder.**

---

*\*Richard Ruda* and *James I. Crowley* filed a brief for the Council of State Governments et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Commonwealth of Massachusetts et al. by *Scott Harshbarger,* Attorney General of Massachusetts, and *Thomas W. Rynard;* for the National Association of Independent Insurers et al. by *Charles Platto* and *Phillip Stano;* and for the Reinsurance Association of America et al. by *Maureen E. Mahoney.*

JUSTICE O'CONNOR delivered the opinion of the Court.

In this case, we consider whether an abstention-based remand order is appealable as a final order under 28 U. S. C. § 1291, and whether the abstention doctrine first recognized in *Burford* v. *Sun Oil Co.*, 319 U. S. 315 (1943), can be applied in a common-law suit for damages.

I

Petitioner, the Insurance Commissioner for the State of California, was appointed trustee over the assets of the Mission Insurance Company and its affiliates (Mission companies) in 1987, after those companies were ordered into liquidation by a California court. In an effort to gather the assets of the defunct Mission companies, the Commissioner filed the instant action against respondent Allstate Insurance Company in state court, seeking contract and tort damages for Allstate's alleged breach of certain reinsurance agreements, as well as a general declaration of Allstate's obligations under those agreements.

Allstate removed the action to federal court on diversity grounds and filed a motion to compel arbitration under the Federal Arbitration Act, 9 U. S. C. § 1 *et seq.* (1988 ed. and Supp. V). The Commissioner sought remand to state court, arguing that the District Court should abstain from hearing the case under *Burford, supra,* because its resolution might interfere with California's regulation of the Mission insolvency. Specifically, the Commissioner indicated that Allstate would be asserting its right to set off its own contract claims against the Commissioner's recovery under the contract, that the viability of these setoff claims was a hotly disputed question of state law, and that this question was currently pending before the state courts in another case arising out of the Mission insolvency.

The District Court observed that "California has an overriding interest in regulating insurance insolvencies and liquidations in a uniform and orderly manner," and that in this

case "this important state interest could be undermined by inconsistent rulings from the federal and state courts." App. to Pet. for Cert. 34a. Based on these observations, and its determination that the setoff question should be resolved in state court, the District Court concluded this case was an appropriate one for the exercise of *Burford* abstention. The District Court did not stay its hand pending the California courts' resolution of the setoff issue, but instead remanded the entire case to state court. The District Court entered this remand order without ruling on Allstate's motion to compel arbitration.

After determining that appellate review of the District Court's remand order was not barred by 28 U. S. C. § 1447(d), see *Garamendi* v. *Allstate Ins. Co.*, 47 F. 3d 350, 352 (CA9 1995) (citing *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336 (1976)), and that the remand order was appealable under 28 U. S. C. § 1291 as a final collateral order, see 47 F. 3d, at 353–354 (citing *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1 (1983)), the Court of Appeals for the Ninth Circuit vacated the District Court's decision and ordered the case sent to arbitration. The Ninth Circuit concluded that federal courts can abstain from hearing a case under *Burford* only when the relief being sought is equitable in nature, and therefore held that abstention was inappropriate in this case because the Commissioner purported to be seeking only legal relief. 47 F. 3d, at 354–356; App. to Pet. for Cert. 35a–37a (order denying petition for rehearing because Commissioner had waived any argument that this case involved a request for equitable relief).

The Ninth Circuit's holding that abstention-based remand orders are appealable conflicts with the decisions of other Courts of Appeals, see *Doughty* v. *Underwriters at Lloyd's, London*, 6 F. 3d 856, 865 (CA1 1993) (order not appealable); *Corcoran* v. *Ardra Insurance Co., Ltd.*, 842 F. 2d 31, 34 (CA2 1988) (same); *In re Burns & Wilcox, Ltd.*, 54 F. 3d 475, 477,

n. 7 (CA8 1995) (same); but see *Minot* v. *Eckardt-Minot,* 13 F. 3d 590, 593 (CA2 1994) (order appealable under collateral order doctrine), as does its determination that *Burford* abstention can only be exercised in cases in which equitable relief is sought, see *Lac D'Amiante du Quebec, Ltee* v. *American Home Assurance Co.,* 864 F. 2d 1033, 1045 (CA3 1988) (*Burford* abstention appropriate in case seeking declaratory relief); *Brandenburg* v. *Seidel,* 859 F. 2d 1179, 1192, n. 17 (CA4 1988) (*Burford* abstention appropriate in action for damages); *Wolfson* v. *Mutual Benefit Life Ins. Co.,* 51 F. 3d 141, 147 (CA8 1995) (same); but see *Fragoso* v. *Lopez,* 991 F. 2d 878, 882 (CA1 1993) (federal court can abstain under *Burford* only if it is "sitting in equity"); *University of Maryland* v. *Peat Marwick Main & Co.,* 923 F. 2d 265, 272 (CA3 1991) (same); *Baltimore Bank for Cooperatives* v. *Farmer's Cheese Cooperative,* 583 F. 2d 104, 111 (CA3 1978) (same). We granted certiorari to resolve these conflicts, 516 U. S. 929 (1995), and now affirm on grounds different from those provided by the Ninth Circuit.

## II

We first consider whether the Court of Appeals had jurisdiction to hear Allstate's appeal under 28 U. S. C. § 1291, which confers jurisdiction over appeals from "final decisions" of the district courts, and 28 U. S. C. § 1447(d), which provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."

We agree with the Ninth Circuit and the parties that § 1447(d) interposes no bar to appellate review of the remand order at issue in this case. See 47 F. 3d, at 352; Brief for Petitioner 29–30; Brief for Respondent 13–14, n. 12. As we held in *Thermtron Products, Inc.* v. *Hermansdorfer, supra,* at 345–346, and reiterated this Term in *Things Remembered, Inc.* v. *Petrarca,* 516 U. S. 124, 127 (1995), "§ 1447(d) must be read *in pari materia* with § 1447(c), so

that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." This gloss renders § 1447(d) inapplicable here: The District Court's abstention-based remand order does not fall into either category of remand order described in § 1447(c), as it is not based on lack of subject matter jurisdiction or defects in removal procedure.

Finding no affirmative bar to appellate review of the District Court's remand order, we must determine whether that review may be obtained by appeal under § 1291. The general rule is that "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 868 (1994) (citations omitted). Accordingly, we have held that a decision is ordinarily considered final and appealable under § 1291 only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin* v. *United States*, 324 U. S. 229, 233 (1945); see also *Digital, supra,* at 867 (quoting this standard). We have also recognized, however, a narrow class of collateral orders which do not meet this definition of finality, but which are nevertheless immediately appealable under § 1291 because they " 'conclusively determine [a] disputed question' " that is " 'completely separate from the merits of the action,' " " 'effectively unreviewable on appeal from a final judgment,' " *Richardson-Merrell Inc.* v. *Koller,* 472 U. S. 424, 431 (1985) (quoting *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 468 (1978)), and "too important to be denied review," *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 546 (1949).

The application of these principles to the appealability of the remand order before us is controlled by our decision in *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, *supra.* The District Court in that case entered an order under *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800 (1976), staying a federal diversity suit

pending the completion of a declaratory judgment action that had been filed in state court. The Court of Appeals held that this stay order was appealable under § 1291, and we affirmed that determination on two independent grounds.

We first concluded that the abstention-based stay order was appealable as a "final decision" under § 1291 because it put the litigants " 'effectively out of court,' " 460 U. S., at 11, n. 11 (quoting *Idlewild Bon Voyage Liquor Corp.* v. *Epstein*, 370 U. S. 713, 715, n. 2 (1962) *(per curiam)*), and because its effect was "precisely to surrender jurisdiction of a federal suit to a state court," 460 U. S., at 11, n. 11. These standards do not reflect our oft-repeated definition of finality, see *supra*, at 712 (citing *Catlin, supra*, at 233); see, *e. g., Digital, supra*, at 867 (citing the *Catlin* definition); *Lauro Lines s.r.l.* v. *Chasser*, 490 U. S. 495, 497 (1989) (same); *Van Cauwenberghe* v. *Biard*, 486 U. S. 517, 521–522 (1988) (same), but in *Moses H. Cone* we found their application to be compelled by precedent, see 460 U. S., at 11, n. 11 (*"Idlewild's* reasoning is limited to cases where (under *Colorado River*, abstention, or a closely similar doctrine) the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum").

As an alternative to this reliance on *Idlewild*, we also held that the stay order at issue in *Moses H. Cone* was appealable under the collateral order doctrine. 460 U. S., at 11. We determined that a stay order based on the *Colorado River* doctrine "presents an important issue separate from the merits" because it "amounts to a refusal to adjudicate" the case in federal court; that such orders could not be reviewed on appeal from a final judgment in the federal action because the district court would be bound, as a matter of res judicata, to honor the state court's judgment; and that unlike other stay orders, which might readily be reconsidered by the district court, abstention-based stay orders of this ilk are "conclusive" because they are the practical equivalent of an order dismissing the case. 460 U. S., at 12.

The District Court's order remanding on grounds of *Burford* abstention is in all relevant respects indistinguishable from the stay order we found to be appealable in *Moses H. Cone*. No less than an order staying a federal court action pending adjudication of the dispute in state court, it puts the litigants in this case "'effectively out of court,'" *Moses H. Cone, supra,* at 11, n. 11 (quoting *Idlewild Bon Voyage Liquor Corp.* v. *Epstein, supra,* at 715, n. 2), and its effect is "precisely to surrender jurisdiction of a federal suit to a state court," 460 U. S., at 11, n. 11. Indeed, the remand order is clearly more "final" than a stay order in this sense. When a district court remands a case to a state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket.

The District Court's order is also indistinguishable from the stay order we considered in *Moses H. Cone* in that it conclusively determines an issue that is separate from the merits, namely, the question whether the federal court should decline to exercise its jurisdiction in the interest of comity and federalism. See *infra,* at 716–717, 727–728. In addition, the rights asserted on appeal from the District Court's abstention decision are, in our view, sufficiently important to warrant an immediate appeal. See *infra,* at 716, 723–728 (describing interests weighed in decision to abstain under *Burford*); cf. *Digital,* 511 U. S., at 878 (review under collateral order doctrine limited to those issues "'too important to be denied review'") (quoting *Cohen, supra,* at 546). And, like the stay order we found appealable in *Moses H. Cone,* the District Court's remand order in this case will not be subsumed in any other appealable order entered by the District Court.

We have previously stated that "an order remanding a removed action does not represent a final judgment reviewable by appeal." *Thermtron Products, Inc.* v. *Hermansdorfer,* 423 U. S., at 352–353. Petitioner asks that we adhere to that statement and hold that appellate review of the District

Court's remand order can only be obtained through a petition for writ of mandamus. To the extent *Thermtron* would require us to ignore the implications of our later holding in *Moses H. Cone*, however, we disavow it. *Thermtron*'s determination that remand orders are not reviewable "final judgments" doubtless was necessary to the resolution of that case, see 423 U. S., at 352 (posing the question whether mandamus was the appropriate vehicle), but our principal concern in *Thermtron* was the interpretation of the bar to appellate review embodied in 28 U. S. C. § 1447(d), see *supra*, at 711–712, and our statement concerning the appropriate procedural vehicle for reviewing a district court's remand order was peripheral to that concern. Moreover, the parties in *Thermtron* did not brief the question, our opinion does not refer to *Catlin* or its definition of "final decisions," and our opinion nowhere addresses whether any class of remand order might be appealable under the collateral order doctrine. Indeed, the only support *Thermtron* cites for the proposition that remand orders are reviewable only by mandamus, not by appeal, is *Railroad Co.* v. *Wiswall*, 23 Wall. 507 (1875), the superannuated reasoning of which is of little vitality today, compare *id.*, at 508 (deeming a "writ of error to review what has been done" an inappropriate vehicle for reviewing a court of appeals' "refusal to hear and decide"), with *Moses H. Cone*, 460 U. S., at 10–11, n. 11 (holding that a stay order is appealable *because* it amounts to a refusal to hear and decide a case).

Admittedly, remand orders like the one entered in this case do not meet the traditional definition of finality—they do not "en[d] the litigation on the merits and leav[e] nothing for the court to do but execute the judgment," *Catlin*, 324 U. S., at 233. But because the District Court's remand order is functionally indistinguishable from the stay order we found appealable in *Moses H. Cone*, see *supra*, at 714, we conclude that it is appealable, and turn to the merits of the Ninth Circuit's decision respecting *Burford* abstention.

## III

### A

We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. See, *e. g.*, *Colorado River*, 424 U. S., at 821 ("[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them'"); *England* v. *Louisiana Bd. of Medical Examiners*, 375 U. S. 411, 415 (1964) ("'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction'") (quoting *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 40 (1909)); *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not"). This duty is not, however, absolute. See *Canada Malting Co.* v. *Paterson S. S., Ltd.*, 285 U. S. 413, 422 (1932) ("[T]he proposition that a court having jurisdiction must exercise it, is not universally true"). Indeed, we have held that federal courts may decline to exercise their jurisdiction, in otherwise "'exceptional circumstances,'" where denying a federal forum would clearly serve an important countervailing interest, *Colorado River, supra*, at 813 (quoting *County of Allegheny* v. *Frank Mashuda Co.*, 360 U. S. 185, 189 (1959)), for example, where abstention is warranted by considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration," *Colorado River, supra*, at 817 (internal quotation marks omitted).

We have thus held that federal courts have the power to refrain from hearing cases that would interfere with a pending state criminal proceeding, see *Younger* v. *Harris*, 401 U. S. 37 (1971), or with certain types of state civil proceedings, see *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592 (1975); *Juidice* v. *Vail*, 430 U. S. 327 (1977); cases in which the resolution of a federal constitutional question might be obviated

if the state courts were given the opportunity to interpret ambiguous state law, see *Railroad Comm'n of Tex.* v. *Pullman Co.*, 312 U. S. 496 (1941); cases raising issues "intimately involved with [the States'] sovereign prerogative," the proper adjudication of which might be impaired by unsettled questions of state law, see *Louisiana Power & Light Co.* v. *City of Thibodaux*, 360 U. S. 25, 28 (1959); *id.*, at 31 (Stewart, J., concurring); cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes, see *Great Lakes Dredge & Dock Co.* v. *Huffman*, 319 U. S. 293 (1943); and cases which are duplicative of a pending state proceeding, see *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800 (1976); *Pennsylvania* v. *Williams*, 294 U. S. 176 (1935).

Our longstanding application of these doctrines reflects "the common-law background against which the statutes conferring jurisdiction were enacted," *New Orleans Public Service, Inc.* v. *Council of City of New Orleans*, 491 U. S. 350, 359 (1989) *(NOPSI)* (citing Shapiro, Jurisdiction and Discretion, 60 N. Y. U. L. Rev. 543, 570–577 (1985)). And, as the Ninth Circuit correctly indicated, 47 F. 3d, at 354, it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it "is asked to employ its historic powers as a court of equity," *Fair Assessment in Real Estate Assn., Inc.* v. *McNary*, 454 U. S. 100, 120 (1981) (Brennan, J., concurring). This tradition informs our understanding of the jurisdiction Congress has conferred upon the federal courts, and explains the development of our abstention doctrines. In *Pullman*, for example, we explained the principle underlying our abstention doctrines as follows:

> ". . . The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction. . . . Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction

> with state policies, whether the policy relates to the enforcement of the criminal law, or the administration of a specialized scheme for liquidating embarrassed business enterprises, or the final authority of a state court to interpret doubtful regulatory laws of the state. These cases reflect a doctrine of abstention appropriate to our federal system, whereby the federal courts, 'exercising a wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers." 312 U. S., at 500–501 (citations omitted).

Though we have thus located the power to abstain in the historic discretion exercised by federal courts "sitting in equity," we have not treated abstention as a "technical rule of equity procedure." *Thibodaux, supra,* at 28. Rather, we have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief. See *NOPSI, supra,* at 359 (mandate of federal jurisdiction "does not eliminate . . . the federal courts' discretion in determining whether to grant certain types of relief"). Accordingly, we have not limited the application of the abstention doctrines to suits for injunctive relief, but have also required federal courts to decline to exercise jurisdiction over certain classes of declaratory judgments, see, *e. g., Huffman,* 319 U. S., at 297 (federal court must abstain from hearing declaratory judgment action challenging constitutionality of a state tax); *Samuels* v. *Mackell,* 401 U. S. 66, 69–70, 72–73 (1971) (extending *Younger* abstention to declaratory judgment actions), the granting of which is generally committed to the courts' discretion, see *Wilton* v. *Seven Falls Co.,* 515 U. S. 277, 282 (1995) (federal courts have "discretion in

determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites").

Nevertheless, we have not previously addressed whether the principles underlying our abstention cases would support the remand or dismissal of a common-law action for damages. Cf. *Deakins* v. *Monaghan*, 484 U. S. 193, 202, and n. 6 (1988) (reserving the question whether *Younger* requires abstention in an action for damages); *Ankenbrandt* v. *Richards*, 504 U. S. 689 (1992) (discussing, without applying, *Burford* abstention in damages action). To be sure, we held in *Fair Assessment in Real Estate Assn., Inc.* v. *McNary, supra,* that a federal court should not entertain a 42 U. S. C. § 1983 suit for damages based on the enforcement of a state tax scheme, see 454 U. S., at 115, but we have subsequently indicated that *Fair Assessment* was a case about the scope of the § 1983 cause of action, see *National Private Truck Council, Inc.* v. *Oklahoma Tax Comm'n*, 515 U. S. 582, 589–590 (1995), not the abstention doctrines. To the extent *Fair Assessment* does apply abstention principles, its holding is very limited. The damages action in that case was based on the unconstitutional application of a state tax law, and the award of damages turned first on a declaration that the state tax was in fact unconstitutional. We therefore drew an analogy to *Huffman* and other cases in which we had approved the application of abstention principles in declaratory judgment actions, and held that the federal court should decline to hear the action because "[t]he recovery of damages under the Civil Rights Act first requires a 'declaration' or determination of the unconstitutionality of a state tax scheme that would halt its operation." *Fair Assessment, supra,* at 115.

Otherwise, we have applied abstention principles to actions "at law" only to permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether. See, *e. g., Thibodaux, supra,* at 28–30 (approving stay order); *Fornaris* v. *Ridge*

*Tool Co.*, 400 U. S. 41, 44 (1970) *(per curiam)* (directing District Court to *"hold its hand* until the Puerto Rican Supreme Court has authoritatively ruled on the local law question in light of the federal claims" (footnote omitted)) (emphasis added); *United Gas Pipe Line Co.* v. *Ideal Cement Co.*, 369 U. S. 134, 135–136 (1962) *(per curiam)* ("Wise judicial administration in this case counsels that decision of the federal question be deferred until the potentially controlling state-law issue is authoritatively put to rest"); *Clay* v. *Sun Ins. Office Ltd.*, 363 U. S. 207, 212 (1960) (approving "postponement of decision" in damages suit).

Our decisions in *Thibodaux* and *County of Allegheny* v. *Frank Mashuda Co.*, 360 U. S. 185 (1959), illustrate the distinction we have drawn between abstention-based remand orders or dismissals and abstention-based decisions merely to stay adjudication of a federal suit. In *Thibodaux*, a city in Louisiana brought an eminent domain proceeding in state court, seeking to condemn for public use certain property owned by a Florida corporation. After the corporation removed the action to federal court on diversity grounds, the Federal District Court decided on its own motion to stay the case, pending a state court's determination whether the city could exercise the power of eminent domain under state law. The case did not arise within the "equity" jurisdiction of the federal courts, 360 U. S., at 28, because the suit sought compensation for a taking, and the District Court lacked discretion to deny relief on the corporation's claim. Nonetheless, the issues in the suit were "intimately involved with [the State's] sovereign prerogative." *Ibid.* We concluded that "[t]he considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities are similarly appropriate in a state eminent domain proceeding brought in, or removed to, a federal court." *Ibid.* And based on that conclusion, we affirmed the District Court's order staying the case.

*County of Allegheny* was decided the same day as *Thibodaux*, and like *Thibodaux* it involved review of a District Court order abstaining from the exercise of diversity jurisdiction over a state law eminent domain action. Unlike in *Thibodaux*, however, the District Court in *County of Allegheny* had not merely stayed adjudication of the federal action pending the resolution of an issue in state court, but rather had dismissed the federal action altogether. Based in large measure on this distinction, we reversed the District Court's order. See 360 U. S., at 190; *Thibodaux*, 360 U. S., at 31 (Stewart, J., concurring) ("In *Mashuda*, the Court holds that it was error for the District Court to *dismiss* the complaint" (emphasis added)).

We were careful to note in *Thibodaux* that the District Court had only *stayed* the federal suit pending adjudication of the dispute in state court. Unlike the outright dismissal or remand of a federal suit, we held, an order merely staying the action "does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition." *Id.*, at 29. We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court. By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.

One final line of cases bears mentioning. Though we deal here with our abstention doctrines, we have recognized that federal courts have discretion to dismiss damages actions, in certain narrow circumstances, under the common-law doctrine of *forum non conveniens*. The seminal case recognizing this authority is *Gulf Oil Corp.* v. *Gilbert*, 330 U. S. 501

(1947), in which we considered whether a Federal District Court sitting in diversity in New York could dismiss a tort action for damages on the grounds that Virginia provided a more appropriate locale for adjudicating the dispute. *Id.*, at 503. We conceded that the application of this doctrine should be "rare," *id.*, at 509, but also held that the exercise of *forum non conveniens* is not limited to actions in equity:

> "This Court[,] in recognizing and approving it by name has never indicated that it was rejecting application of the doctrine to law actions which had been an integral and necessary part of [the] evolution of the doctrine. Wherever it is applied in courts in other jurisdictions, its application does not depend on whether the action is at law or in equity." *Id.*, at 505, n. 4 (citations omitted).

The dispute in *Gulf Oil* was over venue, not jurisdiction, and the expectation was that after dismissal of the suit in New York the parties would refile in federal court, not the state courts of Virginia. This transfer of venue function of the *forum non conveniens* doctrine has been superseded by statute, see 28 U. S. C. § 1404(a); *Piper Aircraft Co.* v. *Reyno*, 454 U. S. 235, 253 (1981), and to the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in "cases where the alternative forum is abroad." *American Dredging Co.* v. *Miller*, 510 U. S. 443, 449, n. 2 (1994); see, *e. g., Piper, supra,* at 265–269 (dismissal of wrongful death action).

The fact that we have applied the *forum non conveniens* doctrine in this manner does not change our analysis in this case, where we deal with the scope of the *Burford* abstention doctrine. To be sure, the abstention doctrines and the doctrine of *forum non conveniens* proceed from a similar premise: In rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum. But our abstention doctrine is of a distinct historical pedigree, and the tradi-

tional considerations behind dismissal for *forum non conveniens* differ markedly from those informing the decision to abstain. Compare *American Dredging, supra,* at 448–449 (describing "multifarious factors," including both public and private interests, which might allow a district court to dismiss a case under doctrine of *forum non conveniens*), with *Burford,* 319 U. S., at 332–333 (describing "federal-state conflict" that requires a federal court to yield jurisdiction in favor of a state forum). Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism. See, *e. g., ibid.; Younger,* 401 U. S., at 44–45. Dismissal for *forum non conveniens,* by contrast, has historically reflected a far broader range of considerations, see *Piper, supra,* at 241, 257–262 (describing the interests which bear on *forum non conveniens* decision); *Gulf Oil, supra,* at 508–509 (same), most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality, see *Piper, supra,* at 257–259 (evidentiary problems, unavailability of witnesses, difficulty of coordinating multiple suits); *Gulf Oil, supra,* at 511 (availability of witnesses, need to interplead Virginia corporation, location of evidence).

## B

With these background principles in mind, we consider the contours of the *Burford* doctrine. The principal issue presented in *Burford* was the "reasonableness" of an order issued by the Texas Railroad Commission, which granted "a permit to drill four oil wells on a small plot of land in the East Texas oil field." 319 U. S., at 317. Due to the potentially overlapping claims of the many parties who might have an interest in a common pool of oil and the need for uniform regulation of the oil industry, Texas endowed the Railroad Commission with exclusive regulatory authority in the area. Texas also placed the authority to review the Commission's

orders in a single set of state courts, "[t]o prevent the confusion of multiple review," *id.*, at 326, and to permit an experienced cadre of state judges to obtain "specialized knowledge" in the field, *id.*, at 327. Though Texas had thus demonstrated its interest in maintaining uniform review of the Commission's orders, the federal courts had, in the years preceding *Burford*, become increasingly involved in reviewing the reasonableness of the Commission's orders, both under a constitutional standard imposed under the Due Process Clause, see, *e. g., Railroad Comm'n of Tex.* v. *Rowan & Nichols Oil Co.*, 310 U. S. 573, 577 (1940), and under state law, which established a similar standard, see *Burford*, 319 U. S., at 317, 326.

Viewing the case as "a simple proceeding in equity to enjoin the enforcement of the Commissioner's order," *id.*, at 317, we framed the question presented in terms of the power of a federal court of equity to abstain from exercising its jurisdiction:

> "Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest,' for it 'is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.' While many other questions are argued, we find it necessary to decide only one: Assuming that the federal district court had jurisdiction, should it, as a matter of sound equitable discretion, have declined to exercise that jurisdiction here?" *Id.*, at 317–318 (footnote omitted) (quoting *United States ex rel. Greathouse* v. *Dern*, 289 U. S. 352, 360 (1933), and *Pennsylvania* v. *Williams*, 294 U. S., at 185).

Having thus posed the question in terms of the District Court's discretion, as a court sitting "in equity," to decline jurisdiction, we approved the District Court's dismissal of the complaint on a number of grounds that were unique to that case. We noted, for instance, the difficulty of the regulatory issues presented, stating that the "order under consideration is part of the general regulatory system devised for the conservation of oil and gas in Texas, an aspect of 'as thorny a problem as has challenged the ingenuity and wisdom of legislatures.'" 319 U. S., at 318 (quoting *Rowan, supra*, at 579). We also stressed the demonstrated need for uniform regulation in the area, 319 U. S., at 318–319, citing the unified procedures Texas had established to "prevent the confusion of multiple review," *id.*, at 325–326, and the important state interests this uniform system of review was designed to serve, *id.*, at 319–320. Most importantly, we also described the detrimental impact of ongoing federal court review of the Commission's orders, which review had already led to contradictory adjudications by the state and federal courts. *Id.*, at 327–328, 331–332.

We ultimately concluded in *Burford* that dismissal was appropriate because the availability of an alternative, federal forum threatened to frustrate the purpose of the complex administrative system that Texas had established. See *id.*, at 332 ("The whole cycle of federal-state conflict cannot be permitted to begin again"). We have since provided more generalized descriptions of the *Burford* doctrine, see, *e. g., County of Allegheny*, 360 U. S., at 189 ("abstention on grounds of comity with the States where the exercise of jurisdiction by the federal court would disrupt a state administrative process"); *Colorado River*, 424 U. S., at 814–816 (abstention where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern"), but with the exception of cases that rest only loosely on the *Burford* rationale, *e. g.,*

*Louisiana Power & Light Co.* v. *City of Thibodaux*, 360 U. S. 25 (1959), we have revisited the decision only infrequently in the intervening 50 years. See *NOPSI*, 491 U. S. 350 (1989).

In *NOPSI*, our most recent exposition of the *Burford* doctrine, we again located the power to dismiss based on abstention principles in the discretionary power of a federal court sitting in equity, and we again illustrated the narrow range of circumstances in which *Burford* can justify the dismissal of a federal action. The issue in *NOPSI* was pre-emption. A New Orleans utility that had been saddled by a decision of the Federal Energy Regulatory Commission (FERC) with part of the cost of building and operating a nuclear reactor sought approval of a rate increase from the Council of the City of New Orleans. The council denied the rate increase on the grounds that "a public hearing was necessary to explore 'the legality and prudency' *[sic]*" of the expenses allocated to the utility under the FERC decision, 491 U. S., at 355, and the utility brought suit in federal court, seeking an injunction against enforcement of the council's order and a declaration that the utility was entitled to a rate increase. The utility claimed that "federal law required the Council to allow it to recover, through an increase in retail rates, its FERC-allocated share of the [cost of the reactor]." *Ibid.* The federal pre-emption question was the only issue raised in the case; there were no state law claims.

In reversing the District Court's decision to dismiss under *Burford*, we recognized "the federal courts' discretion in determining whether to grant certain types of relief," 491 U. S., at 359, and we indicated, as we had previously in *Alabama Pub. Serv. Comm'n* v. *Southern R. Co.*, 341 U. S. 341, 350–351 (1951), that *Burford* permits "a federal court sitting in equity," 491 U. S., at 361, to dismiss a case only in extraordinary circumstances. We thus indicated that *Burford* allows a federal court to dismiss a case only if it presents " 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in

the case then at bar,'" or if its adjudication in a federal forum "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" 491 U. S., at 361 (quoting *Colorado River, supra,* at 814).

We ultimately held that *Burford* did not provide proper grounds for an abstention-based dismissal in *NOPSI* because the "case [did] not involve a state-law claim, nor even an assertion that the federal claims [were] 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed,'" 491 U. S., at 361 (quoting *McNeese* v. *Board of Ed. for Community Unit School Dist. 187*, 373 U. S. 668, 674 (1963)), and because there was no serious threat of conflict between the adjudication of the federal claim presented in the case and the State's interest in ensuring uniformity in ratemaking decisions:

> "While *Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy. Here, NOPSI's primary claim is that the Council is prohibited by federal law from refusing to provide reimbursement for FERC-allocated wholesale costs. Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim would not disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" 491 U. S., at 362 (quoting *Alabama Pub. Serv. Comm'n, supra,* at 347) (citations omitted).

These cases do not provide a formulaic test for determining when dismissal under *Burford* is appropriate, but they do demonstrate that the power to dismiss under the *Burford*

doctrine, as with other abstention doctrines, see *supra*, at 716–723 (describing the traditional application of the abstention doctrines), derives from the discretion historically enjoyed by courts of equity. They further demonstrate that exercise of this discretion must reflect "principles of federalism and comity." *Growe* v. *Emison*, 507 U. S. 25, 32 (1993). Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the "independence of state action," *Burford*, 319 U. S., at 334, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum. See *NOPSI*, *supra*, at 363 (question under *Burford* is whether adjudication in federal court would "unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity"). This equitable decision balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining "uniformity in the treatment of an 'essentially local problem,'" 491 U. S., at 362 (quoting *Alabama Pub. Serv. Comm'n*, *supra*, at 347), and retaining local control over "difficult questions of state law bearing on policy problems of substantial public import," *Colorado River*, 424 U. S., at 814. This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an " 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Colorado River*, *supra*, at 813 (quoting *County of Allegheny*, 360 U. S., at 188).

C

We turn, finally, to the application of *Burford* in this case. As in *NOPSI*, see 491 U. S., at 363, the federal interests in this case are pronounced, as Allstate's motion to compel arbitration under the Federal Arbitration Act (FAA) implicates a substantial federal concern for the enforcement of arbitra-

tion agreements. See *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 631 (1985) (FAA reflects "emphatic federal policy in favor of arbitral dispute resolution"); cf. *Moses H. Cone*, 460 U. S., at 25–26 (in deciding whether to defer to state court adjudication under the *Colorado River* doctrine, "the presence of federal-law issues must always be a major consideration weighing against surrender"). With regard to the state interests, however, the case appears at first blush to present nothing more than a run-of-the-mill contract dispute. The Commissioner seeks damages from Allstate for Allstate's failure to perform its obligations under a reinsurance agreement. What differentiates this case from other diversity actions seeking damages for breach of contract, if anything, is the impact federal adjudication of the dispute might have on the ongoing liquidation proceedings in state court: The Commissioner claims that any recovery by Allstate on its setoff claims would amount to an illegal "preference" under state law. This question appears now to have been conclusively answered by the California Supreme Court, see *Prudential Reinsurance Co.* v. *Superior Court of Los Angeles Cty.*, 3 Cal. 4th 1118, 842 P. 2d 48 (1992) (permitting reinsurers to assert setoff claims in suits filed by the Commissioner in the Mission insolvency), although at the time the District Court ruled this question was still hotly contested.

The Ninth Circuit concluded that the District Court's remand order was inappropriate because "*Burford* abstention does not apply to suits seeking solely legal relief." 47 F. 3d, at 354. Addressing our abstention cases, the Ninth Circuit held that the federal courts' power to abstain in certain cases is "locat[ed] . . . in the unique powers of equitable courts," and that it derives from equity courts' "'discretionary power to grant or withhold relief.'" 47 F. 3d, at 355 (quoting *Alabama Pub. Serv. Comm'n* v. *Southern R. Co.*, 341 U. S., at 350–351). The Ninth Circuit's reversal of the District Court's abstention–based remand order in this case therefore

reflects the application of a *per se* rule: "[T]he power of federal courts to abstain from exercising their jurisdiction, at least in *Burford* abstention cases, is founded upon a discretion they possess only in equitable cases." 47 F. 3d, at 355–356.

To the extent the Ninth Circuit held only that a federal court cannot, under *Burford,* dismiss or remand an action when the relief sought is not discretionary, its judgment is consistent with our abstention cases. We have explained the power to dismiss or remand a case under the abstention doctrines in terms of the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief, see *supra,* at 717–719, 721–722, and the Commissioner appears to have conceded that the relief being sought in this case is neither equitable nor otherwise committed to the discretion of the court. See App. to Pet. for Cert. 35a–37a (order denying petition for rehearing). In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to "withhold action until the state proceedings have concluded," *Growe,* 507 U. S., at 32; that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether, see *supra,* at 719–721.

The *per se* rule described by the Ninth Circuit is, however, more rigid than our precedents require. We have not strictly limited abstention to "equitable cases," 47 F. 3d, at 356, but rather have extended the doctrine to all cases in which a federal court is asked to provide some form of discretionary relief. See *Huffman,* 319 U. S., at 297; *Samuels,* 401 U. S., at 69–70, 72–73; *supra,* at 718–719. Moreover, as demonstrated by our decision in *Thibodaux,* see *supra,* at 719–721, we have not held that abstention principles are completely inapplicable in damages actions. *Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts

of a disputed question of state law. For example, given the situation the District Court faced in this case, a stay order might have been appropriate: The setoff issue was being decided by the state courts at the time the District Court ruled, see *Prudential Reinsurance Co., supra,* and in the interest of avoiding inconsistent adjudications on that point, the District Court might have been justified in entering a stay to await the outcome of the state court litigation.

Like the Ninth Circuit, we review only the remand order which was entered, and find it unnecessary to determine whether a more limited abstention-based stay order would have been warranted on the facts of this case. We have no occasion to resolve what additional authority to abstain might be provided under our decision in *Fair Assessment,* see *supra,* at 719. Nor do we find it necessary to inquire fully as to whether this case presents the sort of "exceptional circumstance" in which *Burford* abstention or other grounds for yielding federal jurisdiction might be appropriate. Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the *Burford* doctrine. The judgment is affirmed.

*It is so ordered.*

JUSTICE SCALIA, concurring.

I join the opinion of the Court. I write separately only to respond to JUSTICE KENNEDY's concurrence.

JUSTICE KENNEDY, while joining the opinion of the Court, says that he would "not rule out . . . the possibility that a federal court might dismiss a suit for damages in a case where a serious affront to the interests of federalism could be averted in no other way," *post,* at 733. I would not have joined today's opinion if I believed it left such discretionary

dismissal available. Such action is foreclosed, I think, by
the Court's holding, clearly summarized in the concluding
sentences of the opinion: "Under our precedents, federal
courts have the power to dismiss or remand cases based on
abstention principles only where the relief being sought is
equitable or otherwise discretionary. Because this was a
damages action, we conclude that the District Court's re-
mand order was an unwarranted application of the *Burford*
doctrine." *Ante*, at 731.

JUSTICE KENNEDY's projected horrible of a "serious af-
front to the interests of federalism" cannot possibly material-
ize under the Court's holding. There *is* no "serious affront
to the interests of federalism" when Congress lawfully de-
cides to pre-empt state action—which is what our cases hold
(and today's opinion affirms) Congress does whenever it in-
structs federal courts to assert jurisdiction over matters as
to which relief is not discretionary.

If the Court today felt empowered to decide for itself when
congressionally decreed jurisdiction constitutes a "serious
affront" and when it does not, the opinion would have read
much differently. Most pertinently, it would not have found
it *unnecessary* "to inquire fully as to whether this case pre-
sents the sort of 'exceptional circumstance' in which *Burford*
abstention or other grounds for yielding federal jurisdic-
tion might be appropriate." *Ibid.* There were certainly
grounds for such an inquiry if we thought it relevant. The
"[then] unsettled but since resolved question of California
law" to which JUSTICE KENNEDY refers, *post*, at 733, was
only part of the basis for the District Court's decision to re-
mand to state court; the court also pointed more generally
to what it thought was the State's "overriding interest in
regulating insurance insolvencies and liquidations in a uni-
form and orderly manner," App. to Pet. for Cert. 34a. As
the Court's opinion says, it is not necessary to inquire fully
into that matter because this was a damages action.

JUSTICE KENNEDY, concurring.

When this suit first was filed, it raised an unsettled but since resolved question of California law concerning the ability of companies in Allstate's position to set off claims held against Mission. The principal reason for the District Court's decision to dismiss the case was the threat posed to the state proceedings by different state and federal rulings on the question. The court's concern was reasonable. States, as a matter of tradition and express federal consent, have an important interest in maintaining precise and detailed regulatory schemes for the insurance industry. See, *e. g.,* the McCarran-Ferguson Act, 59 Stat. 33, as amended, 15 U. S. C. § 1011 *et seq.* The fact that a state court rather than an agency was chosen to implement California's scheme provided more reason, not less, for the federal court to stay its hand.

At the same time, however, we have not considered a case in which dismissal of a suit for damages by extension of the doctrine of *Burford* v. *Sun Oil Co.,* 319 U. S. 315 (1943), was held to be authorized and necessary. As the Court explains, no doubt the preferred course in such circumstances is to resolve any serious potential for federal intrusion by staying the suit while retaining jurisdiction. We ought not rule out, though, the possibility that a federal court might dismiss a suit for damages in a case where a serious affront to the interests of federalism could be averted in no other way. We need not reach that question here.

Abstention doctrines are a significant contribution to the theory of federalism and to the preservation of the federal system in practice. They allow federal courts to give appropriate and necessary recognition to the role and authority of the States. The duty to take these considerations into account must inform the exercise of federal jurisdiction. Principles of equity thus are not the sole foundation for abstention rules; obligations of comity, and respect for the

appropriate balance between state and federal interests, are an important part of the justification and authority for abstention as well. See, *e. g., id.,* at 334 ("[A] sound respect for the independence of state action requires the federal equity court to stay its hand"); *Younger* v. *Harris,* 401 U. S. 37, 44 (1971) (rooting abstention in "a proper respect for state functions" and "sensitivity to the legitimate interests of both State and National Governments"); *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800, 817 (1976) (abstention doctrines are based on "considerations of proper constitutional adjudication and regard for federal-state relations"). See also Shapiro, Jurisdiction and Discretion, 60 N. Y. U. L. Rev. 543, 551–552 (1985). The traditional role of discretion in the exercise of equity jurisdiction makes abstention easiest to justify in cases where equitable relief is sought, but abstention, including dismissal, is a possibility that may yet be addressed in a suit for damages, if fundamental concerns of federalism require us to face the issue.

With these observations, I join the opinion of the Court.